**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

ARSAT INDUSTRIES S.R.L,

      Plaintiff,               Case No.:

v.

THUMBPRINT, INC., and ESTES
FORWARDING WORLDWIDE LLC,

      Defendants.

_____/

**COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT,
AND BREACH OF SETTLEMENT AGREEMENT**

      Plaintiff, ARSAT INDUSTRIES S.R.L., a company incorporated and operating under the laws of Romania ("ARSAT" or "Plaintiff"), by and through its undersigned counsel, files this Complaint against Defendants, THUMBPRINT, INC., f/k/a Performance Press, Inc. ("THUMBPRINT") and ESTES FORWARDING WORLDWIDE LLC ("EFW"), and states:

**Parties, Jurisdiction and Venue**

      1.     ARSAT is a foreign corporation organized and existing under the laws of Romania under No. J2/1944/1991, with its principal office and place of business in Arad County, Romania.

      2.     THUMBRINT is a Florida corporation, formerly named Performance Press, Inc., with its principal office and place of business in Apopka, Florida.

3.      EFW is a Virginia limited liability company, which is registered to do business in Florida and in Georgia as a foreign limited liability company, and which conducts business in Florida and Georgia.

4.      The subject of this litigation is a request for injunctive relief, declaratory judgment and damages resulting from breach of contract; more specifically, breach of the settlement agreement the parties reached in July 2022 in a prior case before this Court, Case No. 6:21-cv-01721-ACC-GJK.

5.      Pursuant to 28 U.S.C. § 1332(a), this Court has diversity jurisdiction over this action because diversity of citizenship exists between the Parties and the amount in controversy exceeds $75,000.00.

6.      Venue is proper in this District and Division under 28 U.S.C. § 1391(b) and (c) because the events giving rise to the claims and causes of action occurred in this District and Division, THUMBPRINT is a corporation subject to personal jurisdiction in this District and Division, and the contract which is the subject of this action requires that certain actions be brought before this District.

## GENERAL ALLEGATIONS

7.      Plaintiff specializes in manufacturing the Astreea Pedal Hand Sanitizer Dispenser and complementary accessories (the "Products").

8.      In May 2020, Plaintiff and THUMBPRINT entered into a purchase-sale agreement (the "Purchase Agreement"), pursuant to which THUMBPRINT agreed to

2

purchase 150,000 Products from Plaintiff.

9.      Thereafter, Plaintiff delivered thousands of Products to THUMBPRINT, and submitted invoices to THUMBPRINT for the delivered Products in excess of $10,000,000.00.

**A.  The Warehouses**.

10.     THUMBPRINT stored the Products it received from Plaintiff in warehouses located in multiple cities/states; including, Apopka, FL, Houston, TX and Atlanta, GA (collectively, the "Warehouses").

11.     The warehouse located in Atlanta, GA is owned and operated by EFW (the "EFW Warehouse"). EFW is a Freight Forwarder which acts in the capacity of a warehouseman.  The EFW Warehouse contains items from many different depositors who store products in the EFW Warehouse; including, but not limited to, Thumbprint. As of July 15, 2022, more than 45,000 Products, constituting about seventy percent (70%) of the remaining Products, were located in the EFW Warehouse.

12.     Pursuant to EFW's Warehouse Agreement with THUMBRPINT, fees charged to THUMBPRINT each month, if any, are determined by the number of pallets being stored in the EFW Warehouse each month, if any, plus any services provided by EFW related to the shipping or handling thereof. A copy of the EFW Warehouse Agreement, dated June 3, 2020, is attached hereto as **Exhibit "A"**.

13.     Under the EFW Warehouse Agreement, THUMBPRINT does not incur

any charges from EFW unless THUMBPRINT has items/pallets stored in the EFW Warehouse, or EFW's related services are requested or required.

14.     The continuing storage of the Products in the EFW Warehouse is not limiting THUMBPRINT's ability to store other items there if it chose to do so.

**B.   <u>The Original Action and Settlement Agreement.</u>**

15.     On or about October 15, 2021, Plaintiff filed a Complaint for Damages with this Court, Case No. 6:21-cv-01721-ACC-GJK (the "Original Action"), seeking damages against THUMBPRINT in excess of $8,000,000.00 for its failure to pay for the Products it purchased and received from Plaintiff, and breach of the Purchase Agreement.

16.     THUMBPRINT subsequently filed a Counterclaim against Plaintiff, alleging that Plaintiff intentionally or fraudulently induced THUMBPRINT to receive and retain certain Products. THUMBPRINT's alleged damages included monthly storage costs in excess of $20,000.00.

17.     On or about July 15, 2022 (the "Effective Date"), Plaintiff and THUMBPRINT entered into the Settlement Agreement (the "Settlement Agreement"), resolving all claims asserted in the Original Action.[1] A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit "B"**.

---

[1] On July 1, 2022, Plaintiff and THUMBPRINT filed the Notice of Mediation Outcome [Doc. 24], notifying the Court that they had reached the material terms of a settlement, and were finalizing the terms thereof.  On July 11, 2022, the Order of Dismissal [D.E. 25] was entered in the Original Action.

4

18.     Section 2 of the Settlement Agreement requires, *inter alia*, that:

(i)     THUMBPRINT pay to Plaintiff the sum of $2,000,000.00, via continuous monthly payments of $60,000.00 through January 15, 2025;

(ii)    The remaining products be returned to Plaintiff;

(iii)   Plaintiff retrieve the Products from the Warehouses at its own expense, and prior to specified deadlines (a "Pickup Deadlines") for each Warehouse; and

(iv)    Plaintiff shall be liable for all associated fees and charges incurred by THUMBPRINT for the continued storage of the Products beyond the Pickup Deadlines, which THUMBPRINT shall set off against the next monthly settlement installment due to Plaintiff.

19.     The monthly EFW Warehouse charges have never exceeded the amount of THUMBPRINT's monthly settlement installment due Plaintiff.

20.     The EFW storage charges continue to decrease as Products are removed by Arsat from the EFW Warehouse.

21.     Arsat paid EFW directly for all charges associated with Arsats' removal of the Products from the EFW Warehouse.

22.     Arsat provided EFW with advanced deposits EFW had requested for its charges associated with loading the Products for onto trucks provided by Arsat.

C.  **The Penalty**.

23.     Although the Products could remain in the Warehouses beyond the Pickup Deadlines at Plaintiff's sole and exclusive expense (via THUMBPRINT's setoff against its settlement payments to Plaintiff), the Settlement Agreement included unconscionable and unenforceable penalties in the event that Plaintiff did not remove every single Product on or before December 31, 2022 (the "Year-End Deadline"). Specifically, Section 2.1 of the Settlement Agreement (referred to hereafter as, the "Penalty"), states:

> (a)  In the event that, on or before December 31, 2022, Arsat has failed to retrieve more than 100 of the Dispensers from the Atlanta [EFW] Warehouse location, <u>or</u> a total of 200 Dispensers from any or all of the Warehouse locations, then Thumbprint's obligations to make the Settlement Payments due January 15, February 15 and March 15, 2023 shall be abated, Arsat shall credit Thumbprint in the amount of each such Settlement Payment against Thumbprint's payment obligations in paragraph 1 above as if such Settlement Payment was made, and Thumbprint's Settlement Payments to Arsat shall resume and the Settlement Payment abatement shall end with the Settlement Payment due and payable to Arsat on April 15, 2023.  In the event that, after December 31, 2022, the Dispensers remaining in the Atlanta Warehouse location is 100 or less, <u>and</u> the Dispensers remaining in any or all of the Warehouse locations is 200 or less, then the abatement of Settlement Payments shall only apply to the January 15, 2023 and February 15, 2023 payments, and Settlement Payments shall resume with the March 15, 2023 payment.
>
> […]

(d)     In addition to the above, for any and all Products which remain in any of the Warehouse locations after December 31, 2022, ownership shall immediately vest in Thumbprint and, thereafter, Thumbprint may dispose of such Products through scrap or wholesale liquidation at Thumbprint's sole discretion and expense, with Thumbprint to retain all proceeds thereof without credit to Arsat.

**D.  THUMBPRINT's Breaches of the Settlement Agreement.**

24.     The retrieval and shipment of such a large volume of Products by Arsat under the Settlement Agreement required more than seventy-five (75) standard (40") shipping containers, vast amounts of semi-trucks to transporting each shipping containers individually, plus the engagement of forklifts, operators and loaders.

25.     Plaintiff retrieved all of its Products located at the Apopka and Houston warehouses, and retrieved thousands of the Products from the EFW Warehouse, in accordance with the Settlement Agreement.

26.     Plaintiff's efforts to retrieve the remaining Products located in the EFW Warehouse prior to the Year-End Deadline were substantial, and diligently made.

27.     Plaintiff is located in Romania, and does not have offices or employees in the United States.

28.     Immediately following execution of the Settlement Agreement, Arsat engaged an international shipping company, C.H. Robinson Worldwide, Inc. ("CHR"), to retrieve and transport of the Products from the Warehouses to shipping ports on the East coast, and arrange for shipment of the Products back to Europe.

29.     Section 19.a. of the Settlement Agreement requires THUMPRINT to "execute, acknowledge, and deliver such further instruments and do such further acts as may, in [Plaintiff's] reasonable opinion, be necessary, desirable, or proper to carry out more effectively the purpose of this Agreement."

30.     THUMBPRINT repeatedly failed to provide information and execute or deliver necessary information or documents requested by CHR, which were essential for international shipping and customs, and failed to do other acts which Plaintiff or its agents had deemed necessary or proper for it to effectuate the timely removal of the Products from the EFW Warehouse and prepare them for shipment.

31.     THUMBPRINT's failure to cooperate with CHR substantially delayed Plaintiff's efforts to retrieve products from the EFW Warehouse.

32.     After execution of the Settlement Agreement, Plaintiff was advised for the first time that EFW's ability to load Products from its warehouse was limited, and would require approximately three (3) weeks to complete.

33.     On or about December 15, 2022, it became apparent that removing or relocating the Products which remained in the EFW Warehouse may not be logistically possible.

34.     Plaintiff immediately sought viable alternatives to removing all the Products from the EFW Warehouse which would satisfy the intent of the parties and the clear and obvious purpose of the Year-End Deadline.

35.    All such efforts by Arsat were rejected by THUMBPRINT.

36.    Arsat deposited funds with EFW to cover future storage charges, and proposed Arsat's deposit of any additional funds requested by EFW, yet THUMBPRINT insisted it would enforce the Penalty.

37.    Funds that Arsat deposited with EFW remain on deposit as of the filing of this Complaint.

38.    Arsat's efforts to contact EFW and identify additional alternatives that would satisfy the intent of the parties and the purpose of the Year-End Deadline were delayed by more than a week for various reasons beyond Arsat's control, including because EFW's counsel was traveling and unavailable for several days.

39.    Shortly upon the return of EFW's counsel, EFW agreed to assign any and all of THUMBPRINT's obligations and liabilities related to the Warehouse Agreement and the Products to Plaintiff, and to release THUMBPRINT from any liability associated therewith.

40.    On December 30, 2022, EFW's counsel provided the Amended Warehouse Agreement (the "EFW Release") to THUMBPRINT and Plaintiff.  A true and correct copy of the EFW Release, and communications with THUMBPRINT's counsel, are attached hereto as **Composite Exhibit "C"**.

41.    THUMBPRINT refused to sign the EFW Release without any reasonable explanation or justification.

42.     THUMBPRINT continuously refused to cooperate with Plaintiff, or do such further acts as necessary, proper or desired by Plaintiff to carry out more effectively the purposes of the Settlement Agreement and intent of the Year-End Deadline, in an improper attempt to capitalize upon the Penalty in bad faith.

43.     THUMBPRINT has notified Plaintiff in writing that, due to its enforcement of the Penalty, it will not pay the settlement installments due Plaintiff on January 15, February 15, and March 15, 2023.

44.     Section 7 of the Settlement Agreement expressly states (emphasis added):

> 7.      <u>No Excuse or Setoff for Failure to Make Settlement Payments</u>.  Except as expressly set forth in the Agreement, in no event or condition shall Thumbprint be entitled to a set off as to a Settlement Payment or the Settlement Sum, or relieved of its obligations to timely pay the entire Settlement Payments.  Should Thumbprint assert or allege that there has been any breach of this Agreement by Arsat, **or that any Settlement Payment is delayed, excused, discharged, setoff or otherwise not due** as a result of an alleged breach of this Agreement, or **for any other reason**, then **any and all remaining Settlement Payments shall be: (i) deposited by Thumbprint into the registry of the U.S. District Court for the Middle District of Florida,** or **(ii) delivered by Thumbprint to Richard B. Weinman, Esq, Windeweedle, Haines, Ward & Woodman, P.A. ("WHWW") as escrow agent**, …

45.     As of the filing of this Complaint, THUMBPRINT has failed to deliver the January settlement payment to Plaintiff, and has neither deposited such installment into the registry of this Court or to WHWW as escrow agent.

E. **Thumbprint's Immanent Disposal of Plaintiff's Products.**

46.    One hour after midnight on January 1, 2023, THUMBPRINT sent an email to Plaintiff, through counsel, notifying Plaintiff as follows:

  a. that THUMBPRINT would not be paying the settlement installments due on January 15, February 15, and March 15, 2023,

  b. declaring that ownership of all Products which remain in the EFW Warehouse has immediately vested in THUMBPRINT; and

  c. that Plaintiff is not permitted to continue retrieving Products from the EFW Warehouse.

47.    THUMBPRINT also instructed EFW that it was prohibited from allowing Plaintiff or its shipping agent from completing retrieval of the Products from the EFW Warehouse.

48.    On January 4, 2023, THUMBPRINT emailed Plaintiff, through counsel, with a threat to dispose of the Products in the EFW Warehouse unless Plaintiff promptly made a purchase offer to THUMBPRINT.

49.    Plaintiff submitted a good faith offer to THUMBPRINT as requested, but it was promptly rejected by THUMBPRINT.

50.    On January 9, 2023, THUMBPRINT emailed Plaintiff again, through counsel, informing Plaintiff of THUMBPRINT's "plan to promptly dispose of the

Products remaining in the Atlanta Warehouse without further notice to Arsat." A copy of the January 9th email is attached as **Exhibit "D"**.[2]

51.    EFW has refused to oppose THUMBPRINT's instructions without a court order.

52.    Plaintiff has been damaged as a result of THUMBPRINT's failure to do such acts reasonably requested, necessary, desirable or proper to carry out the purpose of the Settlement Agreement, which has resulted in delays and additional costs associated with removal of the Products from the Warehouses.

53.    Plaintiff has been further damaged by THUMBPRINT's instructions to EFW to reject Plaintiff's efforts to retrieve its remaining Products, and will continue to suffer additional damages which cannot be remedied by the payment of damages if THUMBPRINT disposes of Plaintiff's Products as it has repeatedly stated it shall do without further notice.

54.    Plaintiff has substantially complied with the terms of the Settlement Agreement.

55.    All conditions precedent to the filing of this action have either occurred or have been waived.  Vestige

---

[2]  Although the subject of the January 9th email is "FW: Settlement Communication", it is merely a vestige from a prior email utilized to send the disposal notice to Plaintiff's counsel, which has been redacted.

56.     Plaintiff is entitled to recovery of its reasonable attorneys' fees and costs incurred to enforce the terms of the Settlement Agreement and THUMBPRINT's performance thereunder.

57.     Plaintiff has retained the undersigned attorneys to represent it in this action and it is obligated to pay them a reasonable fee for their services.

## COUNT I
### (Injunctive Relief)

58.     Plaintiff realleges paragraphs 1 through 57 as if fully set forth herein.

59.     This is an action seeking injunctive relief against THUMBPRINT and EFW, to prevent THUMBPRINT or EFW from disposing or otherwise taking possession of Plaintiff's property until this Court has ruled upon the merits of Plaintiff's claims; including whether Plaintiff is entitled to its Product under the doctrine of substantial performance, whether the Penalty is an unconscionable and unenforceable penalty, and whether THUMBPRINT willfully breached Settlement Agreement.

60.     Plaintiff has been and continues to be harmed by the deprivation of its rights in and to its Products, which THUMBPRINT agreed to return to Plaintiff.

61.     If THUMBPRINT is not enjoined from improperly and unlawfully seizing or disposing Plaintiff's property, Plaintiff will suffer irreparable harm for which they have no adequate remedy at law, as money damages are insufficient to replace the unique property.

62.    Plaintiff has a substantial likelihood of success on the merits, as THUMBPRINT's improper actions, made in a bad faith effort to extort Plaintiff and attempt to obtain a substantial windfall, are blatant and irrefutable.

63.    The granting of an injunction prohibiting THUMBPRINT from disposing of the Products, as well as enjoining THUMBPRINT and EFW from continuing to deprive Plaintiff of its possessory rights in their personal property or from removing the property from the EFW Warehouse, unless and until the Court has considered whether Plaintiff is entitled to its Products under the doctrine of substantial performance, whether the Penalty is an unconscionable and unenforceable penalty, and whether THUMBPRINT is in material breached Settlement Agreement, is consistent with the public's interest in the Court's uniform enforcement of laws.

WHEREFORE, Plaintiff respectfully prays for the judgment of this Court as follows:

A.    For a preliminary injunction and Order of the Court:

(1) restraining THUMBPRINT from any further action to dispose, destroy, sell or transfer the Products located in the EFW Warehouse;

(2)    restraining EFW from removing, or allowing removal, of the Products from the EFW Warehouse from its warehouse; and

(3)    directing EFW to release all the Products to Plaintiff in return for payment of EFW's previously agreed upon fees and charges for storage and related services;

B.    For Plaintiff's reasonable attorney fees, costs and disbursements in this action; and

C.    For such other and further relief as the Court may deem just and equitable.

## COUNT II
### (Declaratory Judgment)

64.    Plaintiff realleges paragraphs 1 through 57 as if fully set forth herein.

65.    This is an action for Declaratory Judgment under 28 U.S.C. § 2201.

66.    There exists a bona fide, actual, present, practical controversy and dispute between Plaintiff and THUMBPRINT regarding whether Arsat has substantially performed its obligations under the Settlement Agreement as to the Products in the EFW Warehouse, whether the Penalty is an unenforceable penalty, and whether failure to deliver the January, February and/or March 2023 settlement installments to Plaintiff constitute breaches of the Settlement Agreement.

67.    The Settlement Agreement was intended to compensate Plaintiff for non-performance by THUMBPRINT of the Purchase Agreement, via receipt of monetary payment, and mitigation of Plaintiff's damages by returning the Products.

68.    Plaintiff substantially performed its obligations under the Agreement by retrieving all Product located at the Apopka and Houston warehouses and proposing to effectuate the same by removing any obligation, liability or damage (past, present or future), or even any inconvenience to THUMBPRINT, for the storage of Products with EFW beyond the year-end.[3]

69.    THUMBPRINT's allegation that Plaintiff failed to strictly comply with the Year-End Deadline constitutes form over substance.

70.    THUMBPRINT's refusal to allow Arsat to pay EFW to pay for the storage of the Products, or continue to deduct EFW's storage charges from THUMBPRINT's settlement installments paid to Plaintiff for only two (2) more weeks, or to sign the EFW Release completely releasing THUMBPRINT from any obligation or liability to EFW whatsoever, is simply a transparent attempt to generate a windfall recovery for itself by using the Settlement Agreement's unconscionable Penalty provision for what is, at best, an immaterial violation.[4]

---

[3] Under Florida law, where a party's incomplete performance is nonetheless substantial, such that it is nearly equivalent to what was bargained for, the breaching promisor is entitled to recover the full contract value less whatever damages are suffered by the promise on account of the promisor's non-material breach. *See Estate of Wolfe v. 224 Via Marila, LLC*, 338 So. 3d 912 (Fla. 4th DCA 2022); *Strategic Res. Group, Inc. v. Knight-Ridder, Inc.*, 870 So. 2d 846, 848 (Fla. 3d DCA 2003); and *Ocean Ridge Dev. Corp. v. Quality Plastering, Inc.*, 247 So. 2d 72, 74 (Fla. Dist. Ct. App. 1971).

[4] *Hutchison v. Tompkins*, 259 So. 2d 129, 132 (Fla. 1972) (liquidated damages should not be awarded "if it appears unconscionable in light of the circumstances existing at the time of the breach"); *North Beach Investments, Inc. v. Sheikewitz*, 63 So. 2d 498 (Fla. 1953) (The prime factor in determining whether such sum is a penalty or a forfeiture is whether the sum named is just compensation for damages resulting from the breach); *Goldblatt v. C.P. Motion, Inc*., 77 So. 3d 798, 801 (Fla. Dist. Ct. App. 2011) (citing *Sheikewitz,* 63 So. 2d at 499).

71.     Under these circumstances, THUMBPRINT purported entitlement to ownership of hundreds of thousands of dollars' worth of Plaintiff's Products, and THUMBPRINT's efforts to extort Plaintiff by threatening to "dispose" of the Products without substantial payment to THUMBPRINT, plus THUMBPRINT's purported right to avoid its obligation to pay $180,000 in settlement installments to Plaintiff over the next three (3) months, is not merited and would be improper.

72.     The Penalty was not reasonably intended by THUMBPRINT to compensate THUMBPRINT for damages is might sustain by Products remaining in the Warehouses past the Year-End Deadline.

73.     The damages THUMBPRINT would incur as a result of Products remaining at the Warehouses are limited to the storage and removal costs, damages which THUMBPRINT knew how to calculate.

74.     Instead, the Penalty can only be construed as designed to induce full performance by Arsat.[5]

75.     Enforcing the Penalty would yield THUMBPRINT a windfall far beyond compensating it for any damages it may suffer as a result of any Products remaining in the EFW Warehouse, notwithstanding the Section 19.a. of the Settlement Agreement and THUMBPRINT's inexplicable refusal to sign the EFW Release.

---

[5] The sum stipulated to be forfeited must not be so grossly disproportionate to any damages that might reasonably be expected to follow from a breach as to show that the parties could have intended only to induce full performance, rather than to liquidate their damages. *Lefemine v. Baron*, 573 So. 2d 326, 328 (Fla. 1991).

76.     Arsat remains ready, willing, and able to remove the Products from the EFW Warehouse, but THUMBPRINT refuses to allow this mitigation of its actual damages.

77.     Plaintiff is entitled to possession of its Product under the doctrine of substantial performance, because the Penalty is an unconscionable and unenforceable penalty which, if enforced, would constitute an improper monetary windfall to THUMBPRINT and reward them for their bad faith conduct.

78.     Declaratory relief is proper regarding the subject matter of this action because there is a controversy about the existence of a right, power, privilege, or obligation, and Plaintiff is entitled to have the doubt removed because a justiciable controversy exists, as is more specifically set forth above.

79.     A judicial declaration of the parties' rights is necessary and appropriate at this time for the reasons stated herein, including Plaintiff's need to be more certain of their right to secure an injunction against Defendants.

80.     There is a bona fide, actual, present and practical need for a declaration, which deals with a present, ascertained state of facts or a present controversy as to a state of facts.

81.     All adverse interests are before the Court.

82.     The relief sought herein is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.

83.     There is a real and present need for a Court determination of the rights and responsibilities of the parties.

WHEREFORE, Plaintiff demands judgment against THUMBPRINT as follows:

A.     Declaring that Arsat has substantially complied with the Settlement Agreement;

B.     Ordering that THUMBPRINT is required to release, or authorize EFW to release, the Products to Plaintiff;

C.     Declaring that the Penalty is an unconscionable and unenforceable penalty, or would result in an improper financial windfall to THUMBPRINT, and THUMBPRINT is not entitled to the relief they purport to be entitled thereunder;

D.     Awarding Arsat costs of suit incurred in this proceeding; and

E.     For other and further relief as the Court deems just and proper.

### COUNT III
**(Breach of Contract – Anticipatory Repudiation)**

84.      Plaintiff realleges paragraphs 1 through 57 as if fully set forth herein.

85.     Under the Settlement Agreement, THUMBPRINT agreed to pay a total of $2 million to Plaintiff via monthly settlement installments.

86.     Section 7 of the Settlement Agreement expressly requires THUMBPRINT to either pay the installments to Plaintiff, deposit them into the registry of this Court, or deliver them to Plaintiff's undersigned counsel (WHWW) to

be held in escrow.

87.    THUMBPRINT anticipatorily breached the Settlement Agreement by unequivocally repudiating, without a basis, its obligation to honor the terms thereof.

88.    More specifically, THUMBPRINT has stated that it will not be paying the settlement installments due on January 15, February 15, and March 15, 2023, and THUMBPRINT has neither paid the settlement to Plaintiff, deposited them into the registry of this Court, or delivered them to the undersigned counsel for Plaintiffs to be held in escrow.

89.    THUMBPRINT's breach has caused Plaintiff to suffer damages, and Plaintiff shall continue to suffer damages each month that Plaintiff fails to comply with its payment obligations under the Settlement Agreement.

90.    THUMBPRINT's repudiation of its payment obligations constitutes a material breach of the Settlement Agreement, entitling Plaintiff to a Final Judgment against THUMBPRINT in the amount of $4,000,000.00, less the settlement payments made to date.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor for:

a.    Declaring that THUMBPRINT has anticipatorily breached the Settlement Agreement by unequivocally repudiating, without a basis, its obligations under Section 7 thereof;

b.      Entering Final Judgment against THUMBPRINT in the amount of $4,000,000.00, less the settlement payments made by THUMBPRINT to date, upon the filing of an affidavit by Plaintiff;

c.      Awarding Plaintiff's reasonable attorney fees and Court;

d.      Pre- and post-judgment interest; and

e.      Such other and further relief as may be just and proper.

## COUNT IV
### (Breach of Contract)

91.     Plaintiff realleges paragraphs 1 through 57 as if fully set forth herein.

92.     This claim is pled in the alternative to Count III.

93.     This is a claim for damages based on THUMBPRINT's fundamental breach of the Settlement Agreement.

94.     The Settlement Agreement expressly requires THUMBPRINT to "execute, acknowledge, and deliver such further instruments and do such further acts as may, in a Party's reasonable opinion, be necessary, desirable, or proper to carry out more effectively the purpose of this Agreement."[6]

95.     THUMBPRINT continuously refused to cooperate with Plaintiff, or do such further acts as necessary, proper or desired by Plaintiff to carry out more effectively the purposes of the Settlement Agreement and intent of the Year-End Deadline, in an improper attempt to capitalize upon the Penalty in bad faith.

---

[6] Settlement Agreement ¶ 19(a).

96.     THUMBPRINT has further breached the Settlement Agreement by failing to timely deliver settlement installments, which THUMBPRINT asserts are either delayed, excused, discharged, setoff or otherwise not due, into the registry of this Court or delivered to the undersigned counsel for Plaintiffs to be held in escrow.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor for:

a.     Declaring that THUMBPRINT has breached the Settlement Agreement;

b.     Entering Final Judgment against THUMBPRINT in the amount of $4,000,000.00, less the settlement payments made by THUMBPRINT to date, upon the filing of an affidavit by Plaintiff;

c.     Awarding Plaintiff's reasonable attorney fees and Court;

d.     Pre- and post-judgment interest; and

e.     Such other and further relief as may be just and proper.

DATED this 17th day of January, 2023.

> **Winderweedle, Haines, Ward & Woodman, P.A.**
>
> */s/ Richard B. Weinman*
> Richard B. Weinman, Esquire
> FL Bar No.: 0231370
> Email: rweinman@whww.com
> Post Office Box 880
> Winter Park, Florida 32790-0880
> Phone: (407) 423-4246
> Fax: (407) 645-3728
> *Attorneys for Plaintiff, Arsat Industries S.R.L.*

22